UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

_____

DAMIEN M. GRIFFIN,

                          Plaintiff,

v.                                          Case No. 16-cv-716-pp

PHIL PRZYBYLINSKI,

                          Defendant.

_____

**DECISION AND ORDER DENYING WITHOUT PREJUDICE THE DEFENDANT'S MOTION TO COMPEL (DKT. NO. 28), DENYING WITHOUT PREJUDICE THE PLAINTIFF'S MOTION TO COMPEL (DKT. NO. 35) GRANTING THE PLAINTIFF'S MOTION TO APPOINT COUNSEL (DKT. NO. 33), AND DENYING THE DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (DKT. NO. 38)**

_____

        The plaintiff, a Wisconsin state prisoner who is representing himself, filed a complaint under 42 U.S.C. §1983, alleging that the defendant violated his Eighth Amendment rights at the Green Bay Correctional Institution ("GBCI"). Dkt. No. 1. There are several pending motions: the defendant's second motion to compel the plaintiff to provide a medical release, dkt. no. 28; the plaintiff's motion to appoint counsel, dkt. no. 33; the plaintiff's motion to compel, dkt. no. 35; and the defendant's motion for summary judgment, dkt. no. 38. The court will deny the defendant's motion for summary judgment, because it finds that there is a genuine issue of material fact to submit to a jury, and will rule on the other motions.

I.      The Parties' Cross-Motions to Compel

The defendant filed a second motion, asking the court to require the plaintiff to sign a release for his medical records. Dkt. No. 28. The motion indicated that, even though the court had ordered the plaintiff to provide a signed medical release by a date certain, the plaintiff again had opted to draft his own medical release, rather than using the standard release form. Id. at 2-3.

The plaintiff then filed a motion to compel the defendant to produce *to the court*, for inspection, certain records and video footage. Dkt. No. 35. The plaintiff indicated that the defendant had not provided full answers to his discovery demands. Id. at 1-3. The plaintiff also indicated that he'd asked for video footage of the incident that took place during mail call. Id. at 4. The plaintiff asserted that he needed all of the information for summary judgment and for trial, and he asked the court to require the defendant to produce the documents to the court, so that the court could verify that the defendant had received everything he needed. Id. at 4-5.

The parties fully briefed the motion for summary judgment without reference to their pending cross-motions to compel. See Dkt. Nos. 39, 49, 58. This means either that they managed to brief the motion without the materials they indicated they did not have, or that they were able to work out their disagreements. The court is going to deny both motions without prejudice. If, in light of the court's denial of the defendant's motion for summary judgment, the defendant still needs medical information he has not yet been able to obtain,

the court will allow him to renew his motion for the limited purpose of obtaining a full release. If, in light of the court's decision to appoint counsel to represent the plaintiff, his attorney believes that further discovery is necessary, the court will allow counsel to request time for that additional discovery.

II.     The Defendant's Motion to Appoint Counsel

Before the defendant filed his motion for summary judgment, the plaintiff had filed a motion asking the court to appoint counsel to represent him. Dkt. No. 33. On May 23, 2017, the court received a letter from the plaintiff , asking the court to allow him to withdraw his motion to appoint counsel because the motion was "now irrelevant to this case." Dkt. No. 59.

The court assumes that the reason the plaintiff believed that his motion to appoint counsel was irrelevant to his case was because he thought he needed an attorney only for the purposes of summary judgment. The court now has decided the summary judgment motion; it is denying the motion, which means that either the case will proceed to trial or the parties will negotiate a settlement. It is the court's practice to recruit counsel to represent inmates once their cases have survived summary judgment. The court will follow that practice in this case. The court will not withdraw the plaintiff's motion for appointment of counsel; instead, it will grant it, and start recruiting counsel to represent the plaintiff.

Once the court has found an attorney to represent the plaintiff, the court will send the plaintiff paperwork to complete, agreeing to abide by the terms of the court's *pro se* counsel reimbursement policy. After the plaintiff has signed

and returned the paperwork, the court will schedule a hearing to talk with counsel for both sides about the next steps in the case. The plaintiff does not need to file anything, or take any action, until he receives the paperwork from the court.

III. The Defendant's Motion for Summary Judgment

A. *Facts*[1]

During the relevant period, the plaintiff was an inmate at GBCI. Dkt. No. 40, ¶1. The defendant was a correctional officer at GBCI. Id. at ¶6. The plaintiff and the defendant had a brief conversation on January 4, 2014; the content of that conversation is the subject of this lawsuit. Dkt. No. 50.

According to the plaintiff, on January 4, 2014, the defendant went to the plaintiff's cell cell during "mail pass." Dkt. No. 1 at ¶6. The plaintiff stated that he wanted to speak with the Psychological Services Unit ("PSU"), because he felt suicidal and would slit his wrists if left alone in his cell. Id. The defendant stated that he'd heard such complaints "so many times before," and that the plaintiff should file a PSU slip and "they'd see [him] tomorrow." Id. at ¶7. The plaintiff then told the defendant that he needed PSU right away, because did not trust himself alone in his cell. Id. at ¶8. The defendant again told the plaintiff to file a PSU slip, adding that "if your [sic] going to kill yourself do it on first or third shift. Don't do it on mine." Id. at ¶¶9-11. The defendant left. Id.

---

[1] The court takes the facts in this section from the "Defendant's Proposed Findings of Facts," dkt. no. 40, the plaintiff's "Dispute of Defendant's Proposed Findings of Fact," dkt. no. 50, and the plaintiff's sworn complaint, dkt. no. 1, which the court construes as an affidavit at summary judgment. Ford v. Wilson, 90 F.3d 245, 246-47 (7th Cir. 1996).

4

The plaintiff states that "[a]fter realizing [the defendant] had no intentions on getting mental health assistance, I cut both my wrists." Id. at ¶12; see also Dkt. No. 50 at 7. The plaintiff's cellmate, Thomas Isham, started yelling, "man, this crazy mother fucker[']s cutting himself." Dkt. No. 1 at ¶13. The defendant returned and said, "you proved your point now hand out the blade." Id. at ¶14. The plaintiff refused, and continued to cut his writs. Id. at ¶15. The defendant left, then returned with the cell extraction team. Id. at ¶¶15-17.

The defendant recalls the incident differently. According to the defendant, he went to cell E-19 around 3:25 p.m. to deliver mail. Dkt. No. 40 at ¶7. The plaintiff asked about a piece of mail that prison staff had returned to him a few weeks back, around December 23 or 24, 2014. Id. The defendant told the plaintiff that he didn't work those days, but that there could have been a delay with the mail due to the holidays. Id. The plaintiff instructed the defendant to look into the issue "right now or else." Id. at ¶8. The defendant asked what "or else" meant, and the plaintiff responded, "who knows, maybe nothing, maybe being suicidal, but all I know is I want my money." Id. The defendant asked if the plaintiff was serious about his threat, and the plaintiff stated, "man, just go check my money." Id. at ¶9. The defendant left, then came back a few minutes later to give inmate Isham his mail. Id. at ¶10. The defendant asked the plaintiff if he was going to be alright, and the plaintiff responded, "man, why haven't you checked on my shit yet?" Id. The plaintiff then hopped off his bed and walked to the back of the cell. Id. at ¶11. He

5

returned to his bed and showed the defendant a razor blade. Id. The defendant asked the plaintiff to hand out the razor several times, and the plaintiff refused. Id. The plaintiff began to cut both his wrists. Id. at ¶12. The defendant radioed for the cell extraction team, who arrived several minutes later. Id. at ¶13.

The parties agree as to what happened after the cell extraction team arrived. See Dkt. No. 50 at 12. The plaintiff continued to refuse orders to hand out the razor blade, and the cell extraction team used mace, a Taser and physical force to restrain the plaintiff. Dkt. No. 40 at ¶¶14-18; see also Dkt. No. 1 at ¶14-17. The plaintiff received medical and psychological care after the incident. Dkt. No. 40 at ¶¶21-28; Dkt. No. 1 at ¶¶19-22. Since then, on at least two other occasions, the plaintiff has threatened, and attempted to engage in, self-harm when frustrated with prison staff. Dkt. No. 40 at ¶¶26-28.

    B.    *Discussion*

        1.    Summary Judgment Standard

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgement as a matter of law." Fed. R. Civ. P. 56(c); Ames v. Home Depot U.S.A., Inc., 629 F.3d 665, 668 (7th Cir. 2011). The movant bears the burden of establishing that there are no genuine issues of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). The court must construe "the record in the light most favorable to the nonmovant and avoid[] the temptation

6

to decide which party's version of the facts is more likely true." Payne v. Pauley, 337 F.3d 767, 771 (7th Cir. 2003) (quoting Shepherd v. Slater Steels Corp., 168 F.3d 998, 1009 (7th Cir. 1999)). If the movant meets this burden, the non-movant must designate specific facts that establish that there is a genuine triable fact. Fed. R. Civ. P. 56(e). The court grants summary judgment when no reasonable jury could find for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

    2. Eighth Amendment Standard for Deliberate Indifference

Prison officials violate the Eighth Amendment when their conduct demonstrates deliberate indifference to substantial risk of serious harm to inmate health or safety. See Farmer v. Brennan, 511 U.S. 825, 834 (1994). Deliberate indifference contains both an objective element and a subjective element Id.

Under the objective element, the plaintiff must establish that a risk is sufficiently serious. Id. Suicide, attempted suicide and other acts of self-harm pose a "serious" risk to an inmate's health and safety. See Collins v. Seeman, 462 F.3d 757, 760 (7th Cir. 2006) (citing Sanville v. McCaughtry, 266 F.3d 724, 733 (7th Cir. 2001)); see also Rice *ex rel.* Rice v. Correctional Medical Servs., 675 F.3d 650, 665 (7th Cir. 2012) ("[P]rison officials have an obligation to intervene when they know a prisoner suffers from self-destructive tendencies.").

Under the subjective element, the plaintiff must show that prison officials disregarded that serious risk with a "sufficiently culpable state of

7

mind." Farmer, 511 U.S. at 834. "Where the harm at issue is a suicide or attempted suicide, the second, subjective component of an Eighth Amendment claim requires a dual showing that the defendant: (1) subjectively knew the prisoner was at substantial risk of committing suicide[,] and (2) intentionally disregarded the risk." Collins , 462 F.3d at 761 (citing Matos *ex rel.* Matos v. O'Sullivan, 335 F.3d 553, 556 (7th Cir. 2003).

Regarding a defendant's "subjective knowledge," the defendant must be "cognizant of the significant likelihood that an inmate may imminently seek to take his own life[.]" Estate of Novack *ex rel.* Turbin v. County of Wood, 226 F.3d 525, 529 (7th Cir. 2000). Liability does not attach where "[t]he defendants simply were not alerted to the likelihood that [the plaintiff] was a genuine suicide risk." Boncher *ex rel.* Boncher v. Brown County, 272 F.3d 484, 488 (7th Cir. 2001). "Prison officials charged with deliberate indifference might show, for example . . . that they knew the underlying facts but believed (albeit unsoundly) that the risk to which the facts gave rise was insubstantial or nonexistent." Farmer, 511 U.S. at 844.

A defendant who has subjective knowledge still need not "take perfect action or even reasonable action[.]" Collins, 462 F.3d at 762 (quoting Cavalieri v. Shepard, 321 F.3d 616, 622 (7th Cir. 2003)). Liability for deliberate indifference "requires more than negligence, gross negligence or even recklessness; rather, it is satisfied only by conduct that approaches intentional wrongdoing, *i.e.,* 'something less than acts or omissions for the very purpose of

8

causing harm or with knowledge that harm will result.'" Goodvine v. Ankarlo, 9 F. Supp. 3d 899, 934 (W.D. Wis. 2014) (quoting Farmer, 511 U.S. at 835).

        3.      Analysis

The parties agree that the plaintiff told the defendant that he might harm himself, and that attempted suicide is a serious risk to inmate health and safety. The only dispute is whether the defendant disregarded the plaintiff's statement with a sufficiently culpable state of mind. The court concludes that there is a genuine dispute as to this issue of material fact, and that this issue should be decided by a jury.

The plaintiff's sole argument in opposition to summary judgment is his assertion that he informed the defendant that he might harm himself, and that the defendant admits he had knowledge of the plaintiff's statement. Dkt. No. 49 at 5-7. The defendant concedes that during their exchange, the plaintiff mentioned possibly being suicidal. Dkt. No. 44, ¶7. He states that he told the plaintiff that threatening suicide was not something to be taken lightly, and that he asked the plaintiff whether the plaintiff was serious. Id. at ¶¶7-8. The plaintiff, according to the defendant, did not answer that question. Id. The defendant walked away from the cell "to collect [his] thoughts and re-focus on the situation." Id. at ¶9. When he returned, he asked the plaintiff if the plaintiff was going to be alright. The plaintiff responded by asking why the defendant had not checked "on [his] shit yet." Id. Then, the plaintiff "hopped" off his bed, and the defendant heard plastic breaking. When the plaintiff returned, he showed the defendant a razor blade, taken out of a safety razor. The defendant

9

asked the plaintiff several times to hand out the razor. Id. at ¶10. The plaintiff began to cut himself. Id. at ¶11.

The undisputed record shows that the plaintiff told the defendant he was suicidal, that he did not refute or recant that characterization when the defendant pressed him about it, and that the plaintiff obtained a razor blade and showed it to the defendant before cutting his wrists. The defendant argues, though, that he did not believe that the plaintiff was a true suicide risk, given the plaintiff's repeated requests for his money and the plaintiff's general tone and demeanor during the interaction. At the summary judgment stage, the court must view the record in the light most favorable to the non-moving party—the *plaintiff*. The defendant's argument does not prove conclusively that the defendant was not subjectively aware that the plaintiff presented a risk of suicide. It raises a genuine dispute as to that issue of material fact. It is possible that a reasonable jury could conclude that these undisputed facts made the defendant subjectively aware that the plaintiff presented a suicide risk.

The defendant also argues that even if a jury could conclude that he was subjectively aware that the plaintiff presented a suicide risk, that same jury could not conclude that he intentionally disregarded the risk. Dkt. No. 39 at 9. He argues that he immediately asked if the plaintiff was serious, and offered to take him to the psychologist. He also ordered the plaintiff to hand over the razor blade, and then radioed for help. He argues that there were only a few

seconds between the plaintiff's statement that he might be suicidal and the time he began cutting himself.

As the court has discussed, the plaintiff disputes the defendant's version of what happened—he does not agree that the defendant asked if he was serious, or that the defendant offered to take him to the psychologist. There is a genuine dispute as to these facts, which relate to the question of whether the defendant intentionally ignored the plaintiff's need. As to the timing, the defendant speculates that even if he had immediately radioed for help the minute the plaintiff mentioned being suicidal, there is nothing to say that the plaintiff might not have harmed himself anyway. Again, the question of whether there might be something the defendant could have done—called for help, given the plaintiff his mail, somehow de-escalated the situation—is a question for the jury.

The defendant argues that this is a case in which he knew the "underlying facts" indicated a sufficiently substantial danger . . . but "believed (albeit unsoundly) that the risk to which the facts gave rise was insubstantial or nonexistent." Dkt. No. 39 at 9 (quoting Farmer v. Brennan, 511 U.S. at 844). The court finds this case more similar to another the defendant cited, Collins v. Seeman, 462 F.3d 757 (7th Cir. 2006). In Collins, the Seventh Circuit found that where a defendant had specifically told a prison officer that he was feeling suicidal, that officer had the requisite subjective awareness of the risk to the inmate. Id. at 761. But in that case, the officer "immediately notified the control room of [the plaintiff's] request to see the crisis counselor and then

11

returned to [the plaintiff's] cell and informed him that the counselor had been called and that he would be there as soon as possible." Id. The plaintiff then told the officer that he would be alright until the counselor arrived.

Here, the record shows that the defendant had a subjective awareness that the plaintiff might be suicidal, and there is a dispute as to what he said and did—and what he should have said or done—once he became aware of the risk. While a jury might resolve that dispute in favor of the defendant, the dispute is sufficient to allow the plaintiff's claim to survive summary judgment.

IV. Conclusion

The court **DENIES WITHOUT PREJUDICE** the defendant's motion to compel. Dkt. No. 28.

The court **GRANTS** the plaintiff's motion to appoint counsel, dkt. no. 33, and will recruit counsel to represent the plaintiff.

The court **DENIES WITHOUT PREJUDICE** the plaintiff's motion to compel. Dkt. No. 35.

The court **DENIES** the defendant's motion for summary judgment. Dkt. No. 38.

Dated in Milwaukee, Wisconsin this 25th day of October, 2017.

                                              **BY THE COURT:**

                                              **HON. PAMELA PEPPER**
                                              **United States District Judge**